WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Adam Jensen,<br><br>    Plaintiff,<br><br>v.<br><br>Navy Federal Credit Union,<br><br>    Defendant. | No. CV-25-00460-TUC-JGZ<br><br>**ORDER** |

On August 12, 2025, pro se Plaintiff Jason Adam Jensen filed a Complaint alleging violations of 42 U.S.C. § 407 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and asserting claims of willful negligence, harassment, and intentional infliction of emotional distress. (Doc. 1.) Plaintiff has also filed an Application for Leave to Proceed In Forma Pauperis and Motion for Emergency Injunctive Relief (Temporary Restraining Order and Preliminary Injunction). (Docs. 2, 3.) For the following reasons, the Court will dismiss Plaintiff's Complaint with leave to amend, grant Plaintiff's Application for Leave to Proceed in Forma Pauperis, and deny Plaintiff's Motion for Emergency Injunctive Relief.

**I.  Application to Proceed In Forma Pauperis**

The Court may allow a plaintiff to proceed without prepayment of fees when it is shown by affidavit that he "is unable to pay such fees[.]" 28 U.S.C. § 1915(a)(1); LRCiv 3.3. Review of Plaintiff's Application demonstrates that his modest living expenses exceed his limited income. (Doc. 2.) Therefore, the Court will grant the Application.

## II. Statutory Screening of IFP Complaint

District courts must dismiss an action filed in forma pauperis if the court determines the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

District Court screening orders apply the same standard as applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). In order to survive dismissal for failure to state a claim, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 555. Indeed, Fed. R. Civ. P. 8(a)(2) requires a showing that a plaintiff is entitled to relief "rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3. The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right to action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (interpreting Rule 8(a) and explaining that there must be specific, non-conclusory factual allegations sufficient to support a finding by the court that the claims are plausible).

When assessing the sufficiency of the complaint, all well-pleaded factual allegations are taken as true and construed in the light most favorable to the plaintiff, *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018), and all reasonable inferences are drawn in the plaintiff's favor. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). Pro se filings must be construed liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (A complaint filed by a pro se litigant "must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Nonetheless, the court will not accept as true conclusory legal allegations cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678.

1    Finally, if the court determines that dismissal is appropriate, the plaintiff must be
2    given at least one chance to amend a complaint when a more carefully drafted complaint
3    might state a claim. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911
4    F.2d 242, 247 (9th Cir. 1990) ("[A] district court should grant leave to amend even if no
5    request to amend the pleading was made, unless it determines that the pleading could not
6    possibly be cured by the allegation of other facts."). When dismissing with leave to amend,
7    the court is to provide reasons for the dismissal so a plaintiff can make an intelligent
8    decision whether to file an amended complaint. *See Bonanno v. Thomas*, 309 F.2d 320,
9    322 (9th Cir. 1962).

**A. Complaint**

Plaintiff is a resident of Tucson, Arizona and a Social Security benefits recipient who maintains a savings account and checking account with Defendant Navy Federal Credit Union ("NFCU"). (Doc. 1 ¶¶ 2, 8.) Plaintiff alleges that his Social Security benefits are directly deposited into his NFCU savings account. (*Id.* ¶¶ 6, 8.)

According to the Complaint, Plaintiff entered into a credit card agreement with NFCU that provides for "[a] security interest in all of [his] individual and joint share accounts at Navy Federal" as a condition of credit card use. (*Id.* ¶ 9.) Plaintiff asserts that NFCU relied on this security-interest clause to make unauthorized withdrawals from his accounts. (*Id.* ¶ 11.) Plaintiff further alleges that he repeatedly contacted NFCU to request reversal of these withdrawals. (*Id.* ¶ 13.) Although NFCU ultimately reversed the deductions, Plaintiff states that NFCU informed him it could not prevent future automatic withdrawals and that he would need to make alternative arrangements to pay his credit card account to avoid further deductions. (*Id.* ¶¶ 13, 17.) Plaintiff states that NFCU's refusal to stop the automatic withdrawals caused him to experience multiple emotional outbursts and distress, and NFCU agents refused to provide any accommodations under the ADA or to escalate the issue to a level where a human could override the automated process. (*Id.* ¶¶ 18, 19.) Plaintiff contends that NFCU's "blanket security interest" clause is "unlawful and unenforceable under 42 U.S.C. § 407." (*Id.* ¶¶ 10, 20.) He claims that the clause permits

NFCU to automatically withdraw funds from his accounts and that such withdrawals constitute an unlawful "legal process" or "assignment" of Social Security benefits. (*Id.* ¶ 12.)

Plaintiff brings five claims for relief: (1) Violation of 42 U.S.C. § 407; (2) "Discrimination Against Social Security Recipients"; (3) Willful Negligence; (4) Harassment; and (5) Intentional Infliction of Emotional Distress. (Doc. 1 at 6–9.)

**B. Discussion**

**1. Claim 1 Fails to State a Claim Upon Which Relief Can Be Granted**

Section 407 "imposes a broad bar against the use of any legal process to reach all social security benefits." *Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 382 (2003). Plaintiff alleges NFCU violated 42 U.S.C. § 407's anti-attachment provision by enforcing a security interest clause that permitted automatic withdrawals from Plaintiff's account containing Social Security benefits. (Doc. 1 ¶¶ 22–23.)

Section 407, however, does not create a private right of action. Private rights of action must be created by Congress, either expressly or by clear implication. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (private rights of action must be created by Congress); *Pearson v. Bank of Am., N.A.*, No. CV-16-03402-PHX-JJT, 2016 WL 5871490, at *1 (D. Ariz. Oct. 7, 2016) (holding that § 407(a) "does not confer a private right of action on a plaintiff"); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1229–30 (9th Cir. 2008) ("The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. Instead, the statute must either explicitly create a right of action or implicitly contain one." (internal quotations and citations omitted)). Accordingly, even if NFCU's conduct was inconsistent with the statute's protective purpose, Plaintiff lacks statutory authority to compel compliance.

In addition, NFCU's alleged wrongful acts do not fall within the scope of § 407. Section 407 bars the use of "execution, levy, attachment, garnishment, or other legal

process" to seize Social Security benefits. *Washington State Dept. of Social and Health Services*, 537 U.S. at 382; 42 U.S.C. § 407(a). Plaintiff does not allege that NFCU used any of these judicial processes to withdraw funds from his account. Instead, he contends that NFCU's automatic withdrawals pursuant to a credit-card security agreement amount to an "assignment" or "other legal process." (Doc. 1 ¶ 4.) The Supreme Court has rejected such an expansive interpretation, holding that "other legal process" refers to procedures "much like the processes of execution, levy, attachment, and garnishment" in which a judicial or quasi-judicial mechanism compels the transfer of property to satisfy a liability. *Washington State Dept. of Social and Health Services*, 537 U.S. at 385. This interpretation reflects Congress's intent to protect beneficiaries from involuntary seizures imposed through state-backed processes, not to invalidate private contractual arrangements. *See, e.g.*, *Lopez v. Washington Mut. Bank, FA*, 302 F.3d 900, 904–05 (9th Cir.), *opinion amended on denial of reh'g sub nom. Lopez v. Washington Mut. Bank, F.A.*, 311 F.3d 928 (9th Cir. 2002). The voluntarily-accepted account terms at issue here do not violate § 407. In *Lopez*, the Ninth Circuit held that a bank's deduction of overdraft charges from an account into which Social Security benefits were deposited did not violate § 407. *Id.* at 905–06. The court emphasized that the plaintiffs had "remained free at all times to close their account or change their direct deposit instructions," and that their continued use of the account reflected a voluntary arrangement, not an assignment or compelled transfer. *Id.* at 904–05. Other courts have reached the same conclusion with respect to overdraft fees, setoff rights, and similar account terms. *See Sanford v. Standard Fed. Bank*, No. 10-12052, 2011 WL 721314 (E.D. Mich. Feb. 23, 2011) (stating setoff of overdraft charges does not involve "legal process"); *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521 (N.D. Ill. Sept. 4, 2007) (finding bank's offset of overdraft charges did not violate § 407); *Frazier v. Marine Midland Bank, N.A.*, 702 F. Supp. 1000 (W.D.N.Y. 1988) (concluding exercise of contractual setoff right in loan agreement is not violative of § 407(a)). Under *Keffeler* and *Lopez*, Plaintiff's challenge to the enforcement of a consensual contractual provision in his credit agreement falls outside the scope of § 407.

Section 407(a) does provide that the "right of any person to any future payment under this subchapter shall not be transferable or assignable." 42 U.S.C. § 407(a). This language prohibits agreements or legal devices that divert Social Security benefits before the beneficiary receives them, such as when a creditor requires a beneficiary to direct the Social Security Administration to send checks directly to the creditor. *See Philpott v. Essex Cnty. Welfare Bd.*, 409 U.S. 413, 416 (1973) (holding that state could not compel repayment by intercepting Social Security benefits); *Tidwell v. Schweiker*, 677 F.2d 560, 566 (7th Cir. 1982) (invalidating agreement requiring claimant to assign Social Security payments to a state agency). In those situations, the beneficiary's entitlement to future payments is diverted to another party. By contrast, once Social Security benefits are deposited into a beneficiary's account, the funds belong to the beneficiary, who remains free to spend, save, or pledge them like any other asset. *Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 973–74 (7th Cir. 2012) (prearranged debits to pay a private debt are not assignments because the beneficiary remains in control of the funds). Plaintiff's allegations fall into the latter category. He challenges how deposited funds were applied under a consensual security-interest clause, not a diversion of his entitlement to future benefits.

In short, Plaintiff's allegations describe the enforcement of a private credit agreement, not the invocation of a judicial or quasi-judicial process. Because § 407 neither provides a private cause of action nor applies to the conduct alleged, Plaintiff has failed to state a claim under 42 U.S.C. § 407.

**2. Claim 2 Fails to State a Claim Upon Which Relief Can Be Granted**

Liberally construing the Complaint, it appears that Plaintiff is alleging NFCU violated Title III of the ADA by discriminating against Social Security recipients through its general security-interest clause and by failing to provide adequate accommodations for a disability. (Doc. 1 ¶ 28.) Title III prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a). A bank is a place of public accommodation within the meaning of the ADA. *See* 42 U.S.C. § 12182(7)(F).

To state a claim under Title III, a plaintiff must allege facts showing that: (1) he is

disabled within the meaning of the ADA; (2) defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) plaintiff was denied public accommodations by the defendant because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); 42 U.S.C. § 12182(a)-(b). While Plaintiff's disability status and NFCU's status as a public accommodation are not disputed, the Complaint does not plausibly allege a causal link between Plaintiff's disability and NFCU's general security-interest clause.

A facially neutral policy violates the ADA only if it burdens a plaintiff "in a manner different and greater than it burdens others." *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996). Here, the Complaint does not allege that NFCU's clause disproportionately affected Plaintiff because of his disability. Nor does it identify any requested accommodation that NFCU refused to provide. The Complaint acknowledges that after each disputed withdrawal, NFCU reversed the transaction. (Doc. 1 ¶¶ 13, 17–19, 28.) Absent factual allegations tying NFCU's conduct to Plaintiff's alleged disability, the ADA claim fails to state a claim under Title III of the ADA.

### 3. Claims 3, 4, and 5

Claims 3, 4, and 5 arise under state law. (Doc. 1 at 7–9.) Federal jurisdiction in this case rests solely on the presence of a federal claim. (*Id.* ¶ 4); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) (federal courts are courts of limited jurisdiction and may adjudicate only those cases authorized by the Constitution and federal statute); *see also* 28 U.S.C. § 1331.

Because the Court has determined that Plaintiff fails to state a federal claim, no independent basis for subject-matter jurisdiction presently exists. A district court may exercise supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(a), but it may also decline to do so where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Gorstein v. World Sav. Bank*, 110 F. App'x 9, 10–11 (9th Cir. 2004) (recognizing district court's discretion to decline supplemental jurisdiction once federal claims are eliminated). Unless and until a viable

federal claim is stated, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Accordingly, the Court will not screen Claims 3, 4, and 5 unless subject-matter jurisdiction can be established.

### III. Temporary Restraining Order

Plaintiff filed a Motion for Emergency Injunctive Relief (Temporary Restraining Order and Preliminary Injunction). (Doc. 3.) In the Motion, Plaintiff asks the Court to enjoin NFCU from exercising its "security interest" to "levy, garnish, or otherwise execute upon Plaintiff's Social Security funds." (Doc. 3 at 1.)

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Whether to grant or deny a motion for a temporary restraining order or preliminary injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132–33 (9th Cir. 1979). A party seeking injunctive relief under Fed. R. Civ. P. 65 must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the standard for issuing a preliminary injunction is substantially identical to the standard for issuing a temporary restraining order ("TRO")).

### A. Ex Parte Requirements Not Met

Plaintiff seeks a TRO without providing notice to NFCU. A TRO may be entered without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

- 8 -

(B)   the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1); *see also* LRCiv 65.1 ("*Ex parte* restraining orders shall only issue in accordance with Rule 65, Federal Rules of Civil Procedure.").

Plaintiff has not shown that he will suffer irreparable injury before NFCU can be heard in opposition and has not certified the "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Because the request for a temporary restraining order fails to comply with Rule 65(b)(1)(B), the Court, in its discretion, will deny without prejudice Plaintiff's request for a TRO.[1] *See* LRCiv 65.1; s*ee also Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (holding district court abused its discretion in granting ex parte temporary restraining order "when there was no valid reason for proceeding ex parte and by disregarding the strict procedural requirements of Fed. R. Civ. P. 65(b) for the issuance of such ex parte orders"); *Adobe Sys., Inc. v. S. Sun Prods., Inc.*, 187 F.R.D. 636, 643 (S.D. Cal. 1999).

## IV.   Leave to Amend

The Court will dismiss the Complaint with leave to amend.[2] *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (leave to amend is liberally granted unless absolutely clear deficiencies cannot be cured by amendment). The Court has provided the reasons for the dismissal to permit Plaintiff to make an intelligent decision whether to file a First Amended Complaint. *See Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962). Furthermore, Plaintiff is advised that all causes of action alleged in the original Complaint which are not alleged in the First Amended Complaint will be waived. *Hal Roach Studios,*

---

[1] Additionally, for the same reasons the Court found Plaintiff failed to state a claim upon which relief may be granted, the Court also concludes that Plaintiff is unlikely to succeed on the merits.

[2] Plaintiff is advised that the Court's informational Handbook for Self-Represented Litigants, is available at https://www.azd.uscourts.gov/proceeding-without-attorney-0, and may be consulted prior to submitting an amended complaint. Plaintiff is also advised that the non-profit Step Up to Justice provides free, advice-only consultation to federal self-represented litigants. More information is available at https://www.azd.uscourts.gov/federal-court-advice-only-clinic-tucson (last visited Sept. 29, 2024).

*Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (explaining that "an amended pleading supersedes the original").

Any amended complaint filed by Plaintiff must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference. An amended complaint must be clearly designated as the First Amended Complaint on the face of the document and formatted in compliance with LRCiv 7.1. Plaintiff is advised that if an amended complaint fails to state a claim upon which relief can be granted, the Court will likely dismiss this action. Additionally, Plaintiff is advised that if he fails to timely comply with every provision of this Order, this action will be dismissed pursuant to Fed. R. Civ. P. 41(b). *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), *as amended* (May 22, 1992) (district court may dismiss action for failure to comply with any order of the Court).

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Complaint (Doc. 1) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a First Amended Complaint in compliance with this Order.

2. Plaintiff's Application to Proceed in Forma Pauperis (Doc. 2) is **granted**. Plaintiff is not required to pay the filing fee.

3. If Plaintiff fails to file a First Amended Complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice and deny any pending unrelated motions as moot.

4. Plaintiff's Motion for Temporary Restraining Order (Doc. 3) is **denied without prejudice**.

Dated this 18th day of September, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge