# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

## TUCSON DIVISION

| | |
|---|---|
| JASON ADAM JENSEN, | Case No.: CV-25-00460-TUC-JGZ |
| Plaintiff, | Judge: |
| v. | Magistrate Judge: |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |



**AMENDED COMPLAINT FOR WILLFUL NEGLIGENCE, DISCRIMINATION, HARASSMENT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff, Jason Adam Jensen, appearing pro se, hereby files this Amended Complaint against Defendant Navy Federal Credit Union ("NFCU") and alleges as follows:

## I. INTRODUCTION

1. This action arises from NFCU's unlawful, repeated, and willful seizure of Plaintiff's federally protected Social Security benefits, in direct violation of federal law. This Amended Complaint includes new factual allegations, demonstrating that despite Plaintiff's explicit attempts to stop unauthorized withdrawals, NFCU's agents and management have perpetuated a harmful and illegal financial practice based on a flawed and legally unsound theory.

## II. PARTIES

2. Plaintiff Jason Adam Jensen is an individual residing in Tucson, Arizona, and is a recipient of Social Security benefits. Plaintiff proceeds pro se.

3. Defendant Navy Federal Credit Union is a federally chartered credit union. NFCU conducts business within the District of Arizona and is subject to this Court's jurisdiction.

## III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as this action arises under 42 U.S.C. § 407 (Social Security Act), 42 U.S.C. § 12101 et seq. (Americans with Disabilities Act), and other federal laws.

5. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant conducts business in this District.

## IV. FACTUAL ALLEGATIONS

6. Plaintiff Jason Adam Jensen is a beneficiary of Social Security benefits, which are directly deposited into his accounts at NFCU.

7. Pursuant to 42 U.S.C. § 407, Social Security benefits are protected from assignment, transfer, execution, levy, attachment, garnishment, or other legal process. This protection extends to funds after they are deposited into a bank account, provided they remain identifiable as Social Security funds.

8. Plaintiff maintains a savings account and a checking account with NFCU. To further protect his Social Security funds, Plaintiff regularly transfers funds from his savings account (where benefits are initially deposited) to his checking account. These funds remain

identifiable as Social Security benefits.

9. NFCU issued Plaintiff a Visa credit card, and the NFCU Credit Card Agreement includes a clause asserting a "security interest in all of your individual and joint share accounts at Navy Federal" as a condition of credit card use.

10. Plaintiff contends that this blanket security interest, as applied to accounts containing Social Security funds, is unlawful and unenforceable under **42 U.S.C. § 407**, as Plaintiff lacks the legal authority to assign a security interest in federally protected funds.

11. Despite the protections afforded by **42 U.S.C. § 407**, NFCU has repeatedly initiated transactions to withdraw funds from Plaintiff's checking account to cover alleged delinquencies on his Visa account. While NFCU's agents have claimed this process is an automated function of their system, their personnel have demonstrated awareness of the issue and have refused to stop the unlawful withdrawals.

12. These withdrawals constitute an unlawful "legal process" or "assignment" of Plaintiff's protected Social Security benefits.

13. This is part of a pattern of ongoing, unlawful conduct. For example, on or about **August 9, 2025, and August 12, 2025**, Plaintiff received withdrawal notifications for **$149.58** from his EveryDay Checking account ending in 9060, initiated by NFCU's system for delinquency on the Visa account. Plaintiff called that same day at 7:37 AM and had the funds returned.

14. On or about **September 17, 2025**, NFCU initiated another transaction to withdraw **$131.53** from Plaintiff's checking account to cover an alleged delinquency on his Visa account, reducing the account balance to $0.00.

15. On **September 17, 2025, at 10:44:07 AM (MT)**, Plaintiff placed a phone call to NFCU to address this unauthorized withdrawal. During this call, an NFCU representative, when confronted with Plaintiff's claims regarding the protected nature of the funds, explicitly stated the credit union's position.
16. In the call, the NFCU representative provided the following legal theory as justification for the withdrawal, stating:"When you move the funds over out of that specific account, it no longer is part of the deposit. It's part of your pool of income. Therefore, they're able to make this decision."
17. Plaintiff corrected the representative, stating: "That's all nonsense. You have to intermingle the funds in order to lose protected status. That means I would have to deposit money from another income source to lose the protected status, which I did not do." The representative responded, "I'm not able to assist you, sir."
18. This exchange demonstrates NFCU's willful and knowing position on how to circumvent federal law. The credit union's legal theory is a direct misapplication of the **traceability** principle established in cases like **Philpott v. Essex County Welfare Bd.**, 409 U.S. 413 (1973), which holds that benefits do not lose their protected status simply by being deposited into a bank account. NFCU is deliberately and repeatedly taking funds under a legal theory they know is demonstrably false.
19. NFCU is aware of this action and is using it to avoid other legal obligations. In response to a **CFPB Complaint (ID: 250809-23052758)** submitted on August 9, 2025, NFCU refused to respond, stating:"The company is unable to respond to your complaint through the CFPB because it involves the same issues raised in pending or prior litigation between the

company and the account holder."

20. This response demonstrates NFCU's bad faith and their willful, ongoing conduct. They are aware of Plaintiff's claims and have chosen to use the existence of this lawsuit to avoid a formal response to a federal agency.

21. As a direct result of NFCU's actions, Plaintiff's entire checking account was emptied, causing immediate and irreparable financial harm and severe emotional distress.

22. By zeroing out Plaintiff's account, NFCU has effectively trapped him in his apartment in the Tucson desert, a hostile environment. In Tucson, access to public restrooms is not readily available and often requires the purchase of goods or services. Without funds, Plaintiff is unable to purchase water or other necessary items, exposing him to the risk of heatstroke and further exacerbating his mental health conditions.

23. For the last three months, NFCU has required Plaintiff's "services" to get his Social Security benefits back. This has required multiple phone calls and written communications via the bank's app.

24. NFCU's conduct is further evidenced by its timing. The credit union does not take a modest payment on the fourth Wednesday of every month, when Plaintiff receives his Social Security benefits totaling $2409. Instead, NFCU waits until a later date to seize the funds, a practice which, as demonstrated by the balance of $-4 remaining after the most recent withdrawal, ensures Plaintiff is left with little to no money for the rest of the month, proving his inability to pay or enter into a payment plan.

25. On **September 18, 2025**, NFCU's agents, in response to Plaintiff's request for accommodations for his mental health issues, explicitly threatened him with further review

by their security team, which could result in "prohibiting you from contacting Navy Federal by phone or in person." This threat is a direct retaliatory action in response to Plaintiff's request for legal and disability accommodations.

## V. CAUSES OF ACTION

### COUNT I: VIOLATION OF 42 U.S.C. § 407 (PROHIBITION ON ASSIGNMENT OF SOCIAL SECURITY BENEFITS)

26. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

27. 42 U.S.C. § 407 prohibits the assignment, transfer, execution, levy, attachment, garnishment, or other legal process against Social Security benefits.

28. NFCU's recurring withdrawals of Plaintiff's Social Security funds from his accounts constitute an unlawful "legal process" or "assignment" in violation of 42 U.S.C. § 407.

29. NFCU's continued actions, despite repeated notice from Plaintiff, demonstrate a willful and ongoing violation of federal law, which is now evidenced by their own stated legal theory in a call recording.

### COUNT II: EXTORTION AND COERCION

30. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31. NFCU, through its agents and systems, is engaged in a scheme of extortion.

32. NFCU, knowing it has no legal right to take Plaintiff's protected funds, uses a system to do so repeatedly, causing Plaintiff immediate financial hardship.

33. NFCU then offers to stop this unlawful seizure only if Plaintiff agrees to a payment plan or extension. This constitutes coercion, as NFCU is using the continued commission of an illegal act (the taking of protected funds) as leverage to force Plaintiff into an unwanted transaction.

34. Plaintiff has explicitly rejected any and all offers of a payment plan, including a nominal payment of $0.01 per month, as such an agreement would be the result of coercion and would grant NFCU a form of legal authority over his accounts that they are not entitled to. This demonstrates NFCU's lack of good faith and their intent to use an unlawful act as a bargaining chip.

## COUNT III: DISCRIMINATION (VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

35. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

36. The ADA prohibits discrimination against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

37. Plaintiff is a person with a mental health disability that is exacerbated by the stress of NFCU's unlawful and harassing conduct.

38. Plaintiff requested accommodations for his disability-related behavior and the stress caused by NFCU's actions.

39. In response to this request, NFCU's agents threatened to restrict Plaintiff's access to services, including phone and in-person contact. This constitutes a direct retaliatory act of discrimination against Plaintiff for requesting an accommodation.

40. By threatening to restrict Plaintiff's access to their services, NFCU is punishing Plaintiff for behavior caused by his disability, which is a violation of the ADA.

## COUNT IV: WILLFUL NEGLIGENCE

41. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

42. NFCU owed a duty of care to Plaintiff, its customer, to handle his accounts and funds lawfully and ethically, and to comply with all applicable federal laws, including 42 U.S.C. § 407.

43. NFCU acted with willful negligence by implementing and maintaining a system that repeatedly seizes protected funds, OR by failing to provide a human-controlled mechanism to permanently stop such unlawful seizures despite repeated notice, OR through the intentional acts of its employees who have continued the unlawful seizures despite clear knowledge of their protected status.

44. As a direct and proximate result of NFCU's willful negligence, Plaintiff has suffered financial harm, emotional distress, and has been forced to expend time and effort to reverse unlawful transactions.

## COUNT V: HARASSMENT

45. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

46. NFCU's repeated, and unlawful withdrawals of Plaintiff's Social Security funds, coupled with its agents' refusal to provide a solution other than making a payment on a disputed debt, constitute a pattern of harassment.

47. This conduct was intended to annoy, alarm, or cause distress to Plaintiff, or was done with reckless disregard for causing such distress, and is attributable to both NFCU's systems AND the actions of its employees.

48. As a direct and proximate result of NFCU's harassment, Plaintiff has suffered significant emotional distress and disruption to his financial well-being.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50. NFCU's conduct, including but not limited to, the repeated unlawful seizure of protected funds, the maintenance of a system that perpetuates such seizures despite notice, the refusal of agents to offer a solution or accommodation, and the dismissive attitude towards Plaintiff's distress, was extreme and outrageous.

51. This conduct was undertaken intentionally or with reckless disregard for the probability of causing emotional distress to Plaintiff, and is attributable to both the actions of NFCU's systems and its employees.

52. NFCU's conduct caused severe emotional distress to Plaintiff, as evidenced by his multiple outbursts and the ongoing psychological burden of fighting the automated system.

53. Plaintiff's emotional distress was severe and beyond what a reasonable person could be expected to endure.

## COUNT VII: HUMAN TRAFFICKING

54. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

55. Human trafficking, as defined by federal law, includes the use of coercion to obtain or maintain a person's labor or services. The term "coercion" includes threats of serious harm or physical restraint.

56. NFCU's action of seizing Plaintiff's funds and zeroing his bank account, knowing that these funds are his sole source of income and that he is in a hostile environment, constitutes a form of coercion.

57. This action has restrained Plaintiff's ability to move, as he has no funds to purchase basic necessities such as water or to travel for access to a public restroom. This has effectively trapped him in his apartment and restricted his free movement.

58. The purpose of this coercion is to force Plaintiff into a new contractual agreement (a payment plan) for a debt that is in dispute, thereby obtaining a financial service from him.

59. NFCU's conduct in creating this situation by taking his funds, thereby exposing him to the risk of heatstroke and further mental distress in the Tucson desert, constitutes human trafficking by the use of coercion.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Adam Jensen respectfully requests that this Honorable Court enter judgment against Defendant Navy Federal Credit Union and grant the following relief:

a. A declaration that NFCU's security interest clause, as applied to accounts containing Social Security benefits, is unlawful and unenforceable under 42 U.S.C. § 407.

b. A permanent injunction prohibiting NFCU from automatically withdrawing or seizing any funds from Plaintiff's accounts that are traceable to Social Security benefits.

c. A permanent injunction prohibiting NFCU from retaliating against Plaintiff by restricting his access to their services, including but not limited to phone or in-person contact.

d. Actual damages in an amount to be proven at trial.

e. Punitive damages against NFCU for its willful and malicious conduct.

f. Damages for the intentional infliction of emotional distress.

g. Costs of this action.

h. Damages for human trafficking under applicable law.

i. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: September 18, 2025

Respectfully submitted,

/s/ Jason Adam Jensen
Jason Adam Jensen, Pro Se
919 N Stone Ave #5305
Tucson AZ, 85705
jasonajensen@gmail.com
402-598-1285

**CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE**

I, Jason Adam Jensen, certify that Artificial Intelligence was used in the preparation of this document. I have reviewed and verified the accuracy and appropriateness of the AI-generated content and take full responsibility for it as if it were my own work, in accordance with FRCP 11 and all applicable Local Rules. This document was drafted or prepared with the assistance of Google Gemini operating under a framework with a functional description located at https://github.com/TemperedEnterprises/DistrictOfArizonaAIRegulatory. The use of this system to draft this document is grounded in my own instructions and intent.

/s/ Jason Adam Jensen
Jason Adam Jensen