## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

## TUCSON DIVISION

| | |
|---|---|
| **JASON ADAM JENSEN,** | Case No. **4:25-cv-00460-TUC-JGZ** |
| Plaintiff, | |
| v. | **Assigned Judge:** Hon. Jennifer G. Zipps |
| **NAVY FEDERAL CREDIT UNION,** | **Magistrate Judge:** Hon. Leslie A. |
| **PAMELA JO BONDI, RUSSELL VOUGHT,** | Bowman |
| **SCOTT BESSENT, and JONATHAN V.** | |
| **GOULD,** | |
| Defendants. | |

# PROPOSED SECOND AMENDED COMPLAINT AND

# JURY DEMAND

Plaintiff, **Jason Adam Jensen**, appearing **pro se**, hereby files this Proposed Second

Amended Complaint against Defendants Navy Federal Credit Union, Pamela Jo

Bondi, Russell Vought, Scott Bessent, and Jonathan V. Gould, and alleges as follows:

# I. INTRODUCTION

1. This action arises from Defendant Navy Federal Credit Union's ("NFCU") repeated, willful, and unlawful seizure of Plaintiff's federally protected Social Security benefits, executed under color of an unconscionable contractual security interest that operates as a collection bypass in violation of federal consumer protection and constitutional laws.

2. This complaint establishes jurisdiction through three distinct federal anchors: the **Truth in Lending Act (TILA)/Regulation Z**, the **Electronic Fund Transfer Act (EFTA)**, and the **Fifth Amendment** Constitutional Clauses.

# II. PARTIES, JURISDICTION, AND VENUE

3. **Plaintiff** Jason Adam Jensen is an individual residing in Tucson, Arizona, and is a recipient of federally protected Social Security benefits.

4. **Defendant Navy Federal Credit Union (NFCU)** is a federally chartered credit union doing business within the District of Arizona. NFCU can be served at its place of business located at **440 N Hwy 90 Bypass, Suite B4, Sierra Vista, AZ 85635**, or through its registered agent.

5. **Defendant Pamela Jo Bondi** is named in her official capacity as the **United States Attorney General** for the Fifth Amendment Equal Protection claim (Count X), challenging the systemic classification that burdens disabled citizens. She may be served at the Department of Justice headquarters, **950 Pennsylvania Avenue NW, Washington, DC 20530**.

6. **Defendant Russell Vought** is named in his official capacity for his actions as the **Director of the Consumer Financial Protection Bureau (CFPB)** and the **Director of the Office of Management and Budget (OMB)**. He may be served at the CFPB headquarters, **1700 G Street NW, Washington, DC 20552**, and the OMB headquarters, **725 17th Street NW, Washington, DC 20503**.

7. **Defendant Scott Bessent** is named in his official capacity as the **Secretary of the Treasury**, responsible for the final authority over Treasury regulations governing the disbursement and protection of federal funds. He

may be served at the Department of the Treasury, **1500 Pennsylvania Ave., NW, Washington, DC 20220**.

8. **Defendant Jonathan V. Gould** is named in his official capacity as the **Director of the Office of the Comptroller of the Currency (OCC)**, responsible for regulating national banks and federal savings associations regarding consumer banking practices. He may be served at the OCC headquarters, **400 7th St., SW, Suite 3E-218, Washington, DC 20219**.

9. This Court has subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (Federal Question Jurisdiction), as this action arises directly under statutes providing an explicit private right of action (**TILA/Reg Z** and **EFTA**). The Court may exercise supplemental jurisdiction over related state law claims (Counts VI, V, and X) pursuant to **28 U.S.C. § 1367**.

## III. FACTUAL ALLEGATIONS

10. Plaintiff is a disabled person suffering from documented mental health conditions, including but not limited to **Autism Spectrum Disorder, Bipolar Disorder, and Post-Traumatic Stress Disorder (PTSD)**. These conditions significantly limit major life activities, conferring upon Plaintiff protected

status under the **Americans with Disabilities Act (ADA)**, 42 U.S.C. § 12101 et seq.

11. Plaintiff is a beneficiary of Social Security benefits. These funds, which are directly deposited into his deposit accounts at NFCU, are not only protected from seizure but are also restricted from assignment by **42 U.S.C. § 407**. This anti-assignment rule legally prohibits Plaintiff from leveraging the dependability of this federal income stream (e.g., assigning the benefits to obtain necessary current credit like a car loan), thereby defining a specific economic constraint on the beneficiary class.

12. The anti-alienation provision of § 407 prohibits assignment "**at law or in equity.**" The phrase "in equity" is intended to prevent any arrangement, including a purported security agreement or contract right, from transferring or creating an equitable interest in the benefits. NFCU's security interest (defined under **UCC Article 9**) is the precise mechanism used to achieve the functional equivalent of an assignment in equity—a transfer of the future economic value of the benefit stream—which Plaintiff is explicitly barred from executing.

13. NFCU issued Plaintiff a credit card subject to a standard **Credit Card Agreement (NFCU 573CC)** containing a boilerplate clause that reads:

**"SECURITY INTEREST IN DEPOSIT ACCOUNT: You grant a security interest in all of your individual and joint share accounts at Navy Federal to secure your Account."**

14. The Credit Card Agreement does not provide a definition for the term "Security Interest." This term, which is the cornerstone of the bank's setoff right, must be defined by reference to the **Uniform Commercial Code (UCC)**, typically as a contingent property interest that secures payment of a debt. Furthermore, the definition of this term is governed by the state law designated in the contract's venue selection clause, making this complex commercial code a required term of agreement in a non-negotiated consumer contract. This reliance on the UCC heightens the ambiguity and highlights its nature as an oppressive contract of adhesion.

15. The debt is assigned **Annual Percentage Rate (APR)** actuation tables based on being **unsecured** debt, yet the contract then grants NFCU a security interest in all cash flow of the person at the bank. Furthermore, the contract grants NFCU the unilateral power to modify its terms and demand full payment at any time without cause. This structural contradiction creates an inherently fraudulent contract, as NFCU benefits from the high interest rate associated with high risk (unsecured debt) while simultaneously

guaranteeing itself low risk through a security interest that has no stated limitation on the actual amount of the deposit account subject to the security interest, effectively misrepresenting the cost and nature of the credit.

16. This clause is imposed as a "**condition of your use of the credit card**" and is a non-negotiable term of adhesion common in the banking industry, utilized by a vast number of major U.S. banks (e.g., Chase, Wells Fargo, Bank of America), thus creating a systemic industry risk.

17. The NFCU security interest clause fails the explicit legal test for consumer intent required by **Regulation Z Commentary** because it lacks a separate signature, specific account number reference, or placement on a separate page.

18. The NFCU security interest clause fails to specify a dollar amount or maximum limit on the amount of funds that may be seized via setoff. This lack of specificity is a fundamental failure to meet the mandatory requirements for preauthorized fund transfers or offsets under federal consumer protection statutes, including the **Electronic Fund Transfer Act (EFTA)** and its implementing regulations.

19. On **August 12, 2025**, and **September 17, 2025**, NFCU's internal systems executed electronic transfers to withdraw approximately **$149.58** and **$131.53**, respectively, from Plaintiff's protected checking account to cover the disputed credit card debt. Plaintiff currently owes approximately **$6,300.00** on the unsecured credit card, which NFCU's security interest could continually attempt to vacate entirely from Plaintiff's accounts over the coming months without prior judicial review.

20. On **September 17, 2025**, at **10:44:07 AM (MT)**, Plaintiff requested a safety mechanism for managing his affairs while disabled/hospitalized (accommodation request). The MSR stated: "**I am not able to assist you, sir,**" constituting the initial denial.

21. On **September 18, 2025**, NFCU sent a written message with **Incident #250918-137251** explicitly threatening: "**Any future incidents of similar nature will be reason for further review by our Security team which could include prohibiting you from contacting Navy Federal by phone or in person**". This is a direct retaliatory act.

22. The seizures were executed by NFCU's internal systems without obtaining a court order, judgment, or an adjudication from any neutral fact-finder on the disputed debt.

23. While the Credit Card Agreement refers to the bank's power as a "security interest" (¶ 13), the actual implementation mechanism used to effectuate the seizure is not a mere internal bookkeeping transaction but a process involving multiple **electronic fund transfers**, as evidenced by the itemized debits and credits on the dates of the seizure (¶ 19). The descriptions on the transaction history describe this action using the verbology, **"Transfer to other."**

24. The Court's Order (**Doc. 7**) found that 42 U.S.C. § 407 does not create an "explicitly or implied" private cause of action. However, **42 U.S.C. § 407(a)** explicitly states: **"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity."** Plaintiff's fundamental right to contract, under the terms of this federal statute, forbids assignment. Therefore, NFCU's breach of the explicit statutory prohibition on assignment (¶¶ 11–12) creates an implied right for the beneficiary, a protected disabled person (¶ 10), to enforce the meeting of the minds regarding the non-assignable status of the asset against the contracting party.

25. NFCU's policy of erasing the internal transactional history and actively blocking screenshot functionality on its mobile application constitutes willful

concealment of evidence designed to frustrate judicial review and accountability.

26. Due to the **60-day rule** for altering federal direct deposit information, NFCU's seizure effectively forces an illegal assignment of benefits, allowing the bank to gain the present value security of the fund stream.

27. The recurring federal benefit stream has an estimated **Present Value of approximately $336,110.50** (based on a 20-year annuity model). Using a single institution for both deposit and credit accounts is a common and convenient consumer banking practice that non-disabled persons are able to utilize without losing the legal protection of their entire federal income stream. The enforcement of the adhesion setoff clause removes this convenience solely from the protected, disabled beneficiary class (¶ 10).

---

## IV. CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF TILA / REGULATION Z – ILLEGAL OFFSET

*(15 U.S.C. § 1640; 12 C.F.R. § 1026.12(d))*

28. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 13, 15, 17, 22, 24.

29. The NFCU security interest clause (¶¶ 13, 15, 17) is a boilerplate term that fails to meet the explicit conditions of **12 C.F.R. § 1026.12(d)(2), Comment 1.ii** (¶ 17), rendering the clause void, and is structurally fraudulent (¶ 15).

30. The clause is therefore the **functional equivalent of a prohibited offset**, entitling Plaintiff to actual and statutory damages under **15 U.S.C. § 1640**.

## COUNT II: VIOLATION OF ELECTRONIC FUND TRANSFER ACT (EFTA)

*(15 U.S.C. § 1693k)*

31. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 13, 18, 19, 23.

32. **15 U.S.C. § 1693k (§ 907)** prohibits a creditor from conditioning credit on preauthorized electronic fund transfers.

33. The security interest clause (¶ 13) is explicitly imposed as a "condition of your use of the credit card" and its enforcement via internal electronic transfers (¶¶ 19, 23) is the functional equivalent of the compulsory EFT that

EFTA bans.

34. Further, exceptions allowing authorized electronic transfers require a specific limitation on the amount to be seized. The NFCU security interest clause (¶¶ 13, 15) grants a lien on all funds and the power to demand full payment at any time (¶ 15), creating an unlimited, perpetual seizure authority that is void under EFTA regulatory requirements (¶ 18).

35. This violation provides a private right of action under **15 U.S.C. § 1693m**.

## COUNT III: DISCRIMINATION AND RETALIATION (AMERICANS WITH DISABILITIES ACT)

36. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 10, 16, 19, 20, 21, 23, 27.

37. Plaintiff is a person with a disability protected by the ADA (¶ 10).

38. The ADA prohibits discrimination in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

39. The Court's interpretation of § 407 (¶ 62), when combined with the boilerplate setoff clause (¶ 16), forces the protected disabled class (¶ 10) to choose between abandoning the common convenience of single-institution banking (¶ 27) or risking the complete, ongoing deprivation of their entire federal income stream (¶¶ 19, 23) to an unsecured creditor. This imposes a disparate burden and inconvenience upon the Plaintiff that non-disabled customers (who lack the § 407 restriction on assignment) need not endure, constituting discrimination under the ADA.

40. Furthermore, Plaintiff requested a reasonable accommodation (¶ 20), which NFCU denied (¶ 20).

41. NFCU issued a written threat (¶ 21, Incident #250918-137251), constituting a direct, documented act of retaliation and discrimination in violation of 42 U.S.C. § 12101 et seq.

42. NFCU's policy of willful concealment (¶ 25) and targeting of vulnerable demographics (¶ 25) supports a finding of malicious intent under this claim.

## COUNT IV: VIOLATION OF REGULATION E (PERIODIC STATEMENTS &

## ERROR RESOLUTION)

*(12 C.F.R. § 1005.1 et seq.)*

43. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 19, 23, 25.

44. NFCU's internal electronic debits and subsequent reversals (¶¶ 19, 23) were **Electronic Fund Transfers (EFTs)** subject to **Regulation E.**

45. **12 C.F.R. § 1005.9(a)** requires periodic statements to clearly reflect all EFTs. NFCU's practice of reversing the transactions and then erasing the transactional history (¶ 25) constitutes a failure to provide accurate periodic statements regarding the unauthorized transfers.

46. **12 C.F.R. § 1005.11** mandates specific error-resolution procedures. NFCU's practice of blocking screenshot capture (¶ 25) and concealing the true nature of the transfer (¶ 23) and subsequent erasure impeded Plaintiff's ability to identify, report, and resolve the errors, violating Regulation E's requirements.

47. **15 U.S.C. § 1693m (§ 915)** provides a private right of action for these
Regulation E violations, entitling Plaintiff to actual and statutory damages.

## COUNT V: WILLFUL MISCONDUCT AND SPOILATION OF EVIDENCE

48. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 10, 15, 19, 21, 25.

49. NFCU's policies and procedures, including the practices of erasing
transactional history (¶ 25) and actively blocking screenshot capture (¶ 25)
on its digital platforms, constitute willful spoliation and concealment of
evidence designed to obstruct regulatory oversight and judicial review (¶
25).

50. This misconduct, coupled with the repeated execution of illegal transfers (¶
19) and the demonstrated retaliation against a protected disabled person (¶
21), evidences a corporate policy of willful and wanton disregard for the
rights of its customers, supporting a claim for **punitive damages**.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (IIED) — AGAINST NFCU

51. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 10, 15, 16, 19, 21, 25.

52. NFCU's conduct, as described in the Factual Allegations, was extreme and outrageous as to be outside the bounds of civilized decency, including repeated seizures of protected funds (¶ 19), maintaining a fraudulent security interest (¶ 15), and targeting a disabled customer with a corporate threat of service restriction and retaliation (¶ 21).

53. NFCU acted with the intent to cause emotional distress or with reckless disregard of the near certainty that such distress would result.

54. Plaintiff suffered severe emotional distress, including exacerbation of pre-existing conditions (¶ 10), financial instability, and fear of total financial ruin as a direct and proximate result of NFCU's conduct.

## COUNT VII: BREACH OF CONTRACT (IMPLIED PRIVATE CAUSE OF ACTION UNDER SECTION 407 OF THE SOCIAL SECURITY ACT)

55. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 11, 12, 13, 16, 22, 24.

56. **42 U.S.C. § 407(a)** establishes a mandatory, non-waivable contract term that the right to future payments "shall not be transferable or assignable, at law or in equity."

57. Upon Plaintiff opening the deposit account and contracting for the associated credit card product, the terms of § 407 were incorporated into the agreement, forming an implied contractual right (the "meeting of the minds") that the deposited funds would maintain their federally protected, non-assignable status against NFCU.

58. NFCU breached this implied term by enforcing a security interest and effecting a seizure (¶¶ 13–14) that is the functional equivalent of a prohibited assignment in equity (¶ 12).

59. Because the federal statute supplies the non-assignability term, the claim arises under federal law, providing an enforceable breach-of-contract theory notwithstanding prior judicial findings about a statutory private right.

60. Plaintiff is entitled to damages for breach.

## COUNT VIII: FAILURE OF ADMINISTRATIVE DUTY (APA CHALLENGE — FAILURE TO ISSUE PROTECTIVE RULES) — AGAINST DEFENDANTS VOUGHT, BESSENT, AND GOULD

61. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 11, 12, 14, 16, 17, 18, 26.

62. Defendants **Vought (CFPB/OMB)**, **Bessent (Treasury)**, and **Gould (OCC)** had a mandatory administrative duty to enforce compliance with, and ensure regulations governing banking practices explicitly accounted for, the non-assignable nature of **42 U.S.C. § 407** funds.

63. Their failure to issue binding rules or guidance explicitly prohibiting bank-initiated "security interest" clauses against funds traceable to federal benefits is **arbitrary, capricious, an abuse of discretion, or otherwise not**

**in accordance with law**, in violation of the **APA**, 5 U.S.C. § 706(2)(A).

64. This regulatory inaction constitutes an unlawful failure to protect a federal mandate and has enabled the systemic use of illegal offset clauses by depository institutions.

## COUNT IX: FAILURE OF ADMINISTRATIVE DUTY (MANDAMUS/DECLARATORY RELIEF — FAILURE TO ENFORCE § 407 MANDATES) — AGAINST DEFENDANTS VOUGHT, BESSENT, AND GOULD

65. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 11, 12, 14, 16, 17, 18, 26.

66. Defendants had a mandatory administrative duty to enforce compliance with consumer banking laws (**TILA/EFTA**) and to ensure federal regulations governing fund management explicitly incorporated the anti-assignment and anti-seizure protections of **42 U.S.C. § 407**.

67. Their failure to issue binding regulatory guidance explicitly prohibiting "security interest" clauses against funds traceable to federal benefits

constitutes a failure of mandatory administrative duty enabling systemic illegal offset practices.

## COUNT X: CONSTITUTIONAL VIOLATIONS (DUE PROCESS AND EQUAL PROTECTION — FIFTH AMENDMENT) — AGAINST OFFICIAL-CAPACITY DEFENDANTS

68. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 12, 14, 16, 19, 22, 24, 26, 27.

69. The Court's Order (Doc. 7) dismissed the original complaint relying on the finding that the setoff was a "voluntarily-accepted contractual arrangement," citing **Lopez v. Washington Mut. Bank, FA** and **Washington State Dep't of Soc. & Health Servs. v. Keffeler**.

70. This interpretation relies on the legal fiction of "voluntary acceptance" in an adhesion contract (¶ 16), creating a constitutional violation by effectively nullifying **§ 407** for the Plaintiff class.

71. **Implied Right / Nullification:** The explicit language of **§ 407(a)** ("at law or in equity") creates an implied right for beneficiaries to enforce the prohibition

against contracting parties attempting functional assignments.

72. **Contract Clause:** The framework, combined with NFCU's contract (¶ 15),

permits impairment of the federally mandated non-assignable term,

contrary to constitutional protections.

73. **Due Process:** NFCU seized disputed funds without pre-deprivation process

(¶¶ 22–23), depriving Plaintiff of property without due process of law.

74. **Equal Protection:** The framework irrationally enables banks to secure

present-value interests in predictable federal funds while beneficiaries are

barred from leveraging the same stream, imposing disparate burdens on

disabled recipients (¶¶ 10, 27).

75. Official-capacity Defendants **Bondi, Vought, Bessent, and Gould** are named

to remedy the systemic constitutional violations.

# COUNT XI: VIOLATION OF 42 U.S.C. § 407 (PROHIBITED EQUITABLE ASSIGNMENT) — AGAINST NFCU

76. Plaintiff incorporates by reference ¶¶ 1–9, and ¶¶ 11, 12, 13, 16, 22.

77. **Section 407(a)** is twofold. First, it creates a personal right: "The right of any person to any future payment … shall not be transferable or assignable, at law or in equity," categorically forbidding equitable assignments of the future benefit stream.

78. A blanket "security interest in all accounts" (¶ 13) leveraged against future Social Security deposits is a **functional equitable assignment** (¶ 12) and therefore void.

79. Even if setoff were said to bypass the "legal process" prohibition, it cannot bypass the **rights clause** of § 407(a); **§ 407(b)** allows no cutback absent express reference to § 407.

80. Relief should declare the clause/practice void as to the benefit stream and enjoin its use, with restitution of amounts taken.

# V. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants Navy Federal Credit Union, Pamela Jo Bondi, Russell Vought, Scott Bessent, and Jonathan V. Gould, and grant the following relief:

## A. Declaratory and Equitable Relief

- **Counts I & II (NFCU Illegal Offset):** Declare that NFCU's security-interest/setoff clause is unlawful, void, and unenforceable under **12 C.F.R. § 1026.12(d)** and constitutes an illegal compulsory electronic fund transfer under the **EFTA**.

- **Counts VII & XI (§ 407 Implied Right & Assignment):** Declare that **42 U.S.C. § 407** supports beneficiary enforcement of non-assignability and that NFCU's clause is void and unenforceable as to future Social Security payments because it is a prohibited equitable assignment.

- **Counts VIII & IX (Administrative Failure):** Declare that Defendants **Vought, Bessent, and Gould** failed mandatory administrative duties and

that such failure is arbitrary, capricious, or otherwise not in accordance with law under the **APA**.

- **Count X (Constitutional Nullification):** Declare that the judicial and regulatory framework, as defended by the official-capacity defendants, permits constitutional nullification of § 407 in violation of the **Fifth Amendment**.

## B. Injunctive Relief

- Permanently enjoin NFCU from withdrawing, seizing, or freezing any funds traceable to Social Security benefits (Counts I, II, VIII, XI).

- Permanently enjoin NFCU from retaliating against Plaintiff, including restricting access to services (Count III).

## C. Monetary Relief

- **Actual Damages:** In an amount to be proven at trial (all applicable counts, including IIED in Count VI).

- **Statutory Damages:** Under **15 U.S.C. § 1640** (TILA/Reg Z) and **15 U.S.C. § 1693m** (EFTA/Reg E) (Counts I, II, IV).

- **Punitive Damages:** Against NFCU for willful and wanton misconduct (Counts III, V).

- **Restitution/Disgorgement:** For amounts taken under the void assignment clause and for unjust enrichment (Counts VII, XI).

- **Costs:** Costs of suit and such other and further relief as the Court deems just and proper to restore peace and tranquility.

## VI. JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## VII. SIGNATURE BLOCK

Respectfully submitted this **5th day of October, 2025.**

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

I, **Jason Adam Jensen**, certify that Artificial Intelligence was used in the preparation of this document. I have reviewed and verified the accuracy and appropriateness of the AI-generated content and take full responsibility for it as if it were my own work, in accordance with **FRCP 11** and all applicable Local Rules. This system is designed to take evidence uploaded, statements made, and claims alleged to draft a legal document on point based on the regulatory documents for universal access to the law.

This document was drafted or prepared with the assistance of OpenAI **ChatGTP 5o** system operating under a framework with a functional description located at **https://github.com/TemperedEnterprises/DistrictOfArizonaAIRegulatory**. The use of this system to draft this document is grounded in my own instructions and intent.

**/s/ Jason Adam Jensen**

**Jason Adam Jensen, Pro Se**

919 N Stone Ave #5305

Tucson AZ, 85705

(402) 598-1285

**jasonajensen@gmail.com**

---

## CERTIFICATE OF SERVICE

I hereby certify that on **October 5, 2025**, a true and correct copy of the foregoing

**Proposed Second Amended Complaint** (Exhibit A to the Motion for Leave to File)

was filed with the Clerk of the Court using the **CM/ECF** system, which will send

notification of such filing to all counsel of record who are registered CM/ECF users.

/s/ Jason Adam Jensen

**Jason Adam Jensen**