KEB

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jason Adam Jensen, | No.    CV-25-00460-TUC-JGZ |
| Plaintiff, | |
| v. | **ORDER** |
| Navy Federal Credit Union, | |
| Defendant. | |

On August 12, 2025, pro se Plaintiff Jason Adam Jensen, who is proceeding in forma pauperis, filed a Complaint alleging violations of 42 U.S.C. § 407 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and asserting claims of willful negligence, harassment, and intentional infliction of emotional distress. (Doc. 1.) Plaintiff also filed a Motion for Emergency Injunctive Relief (Doc. 3.). In a September 18, 2025 Order, the Court denied Plaintiff's Motion for Emergency Injunctive Relief and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On September 25, 2025, Plaintiff filed a First Amended Complaint (Doc. 8). On October 6, 2025, Plaintiff filed a Motion for Temporary Restraining Order (Doc. 10) and a Motion for Leave to File a Second Amended Complaint (Doc. 11) and lodged a proposed Second Amended Complaint. The Court will grant Plaintiff's Motion for Leave to File a Second Amended Complaint, direct the Clerk of Court to file the Second Amended

1    Complaint, deny the Motion for Temporary Restraining Order, and dismiss the Second
2    Amended Complaint without leave to amend.

3    **I.        Statutory Screening of In Forma Pauperis Complaints**

4              Pursuant to 28 U.S.C. § 1915(e)(2), in a case in which a plaintiff has been granted
5    in forma pauperis status, the Court shall dismiss the case "if the court determines that . . .
6    (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may
7    be granted; or (iii) seeks monetary relief against a defendant who is immune from such
8    relief."

9              A pleading must contain a "short and plain statement of the claim *showing* that the
10   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does
11   not demand detailed factual allegations, "it demands more than an unadorned, the-
12   defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
13   (2009). "Threadbare recitals of the elements of a cause of action, supported by mere
14   conclusory statements, do not suffice." *Id.*

15             "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
16   claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550
17   U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that
18   allows the court to draw the reasonable inference that the defendant is liable for the
19   misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for
20   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
21   experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual
22   allegations may be consistent with a constitutional claim, a court must assess whether there
23   are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

24             But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
25   must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342
26   (9th Cir. 2010). A "complaint [filed by a *pro se* litigant] 'must be held to less stringent
27   standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551

28

U.S. 89, 94 (2007) (per curiam)). However, the Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

If the Court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

## II. Second Amended Complaint

In his 11-count Second Amended Complaint,[1] Plaintiff sues the Navy Federal Credit Union (NFCU) and the following individuals in their official capacities: Pamela Jo Bondi, United States Attorney General; Russell Vought, Director of the Consumer Financial Protection Bureau (CFPB) and Director of Office of Management and Budget (OMB); Scott Bessent, Secretary of the Treasury; and Jonathan V. Gould, Director of the Office of the Comptroller of the Currency (OCC). (Doc. 12. ¶¶ 5–9.) Plaintiff seeks punitive damages and declaratory, injunctive, and monetary relief.

### A. "Factual Allegations"

Plaintiff's Second Amended Complaint includes a "Factual Allegations" section. Many of the statements in Plaintiff's "Factual Allegations" section are not factual allegations but are instead citations to statutory authority and legal conclusions, which the Court is not required to accept as true. *Iqbal*, 556 U.S. at 678. However, exclusive of legal conclusions and citations to statutory authority, Plaintiff alleges as follows.

Plaintiff is a resident of Tucson, Arizona. (*Id.* ¶ 3.) Plaintiff is disabled and suffers from multiple documented mental health conditions that significantly limit his major life activities; thus, he is protected under the Americans with Disabilities Act (ADA). (*Id.* ¶ 10.) Plaintiff receives Social Security benefits that are directly deposited into his NFCU savings account. (*Id.* ¶ 11.)

---

[1] The Court will treat Plaintiff's Second Amended Complaint (lodged at Doc. 12) as superseding the First Amended Complaint (Doc. 8) in its entirety. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) *as amended* (May 22, 1992) (an amended complaint supersedes the original complaint, and after amendment, the original pleading is treated as nonexistent).

Plaintiff entered into a credit card agreement with NFCU, in which, as a condition of credit card use, Plaintiff granted NFCU "a security interest in all of [his] individual and joint share accounts." (*Id.* ¶ 13.) NFCU did not define the term "security interest" in the credit card agreement (*Id.* ¶ 14), and the security-interest clause in the agreement failed "to specify a dollar amount or maximum limit on the amount of funds that may be seized via setoff." (*Id.* ¶ 18). The credit card agreement allows NFCU to "modify its terms and demand full payment at any time without cause." (*Id.* ¶ 14.)

Plaintiff currently owes approximately $6,300 on his NFCU credit card, which he disputes. (*Id.* ¶ 19.) To cover the disputed credit card debt, NFCU's "internal systems" electronically withdrew from his checking account $149.58 on August 12, 2025, and $131.53 on September 17, 2025. (*Id.* ¶ 19.) NFCU's "internal systems" did so "without obtaining a court order, judgment, or adjudication from any neutral fact-finder on the disputed debt." (*Id.* ¶ 22.)

On September 17, 2025, Plaintiff made "an accommodation request," specifically, "a safety mechanism for managing his affairs while disabled/hospitalized." (*Id.* ¶ 20.) An "MSR" denied this request, stating, "I am not able to assist you, sir." (*Id.*) On September 18, 2025, NFCU, "in a direct retaliatory act," sent him a written message stating, "[a]ny future incidents of a similar nature will be reason for further review by our Security team which could include prohibiting you from contacting Navy Federal by phone or in person." (*Id.* ¶ 21.)

NFCU also has a policy of "erasing the internal transactional history and actively blocking" the screenshot function on its mobile application. (*Id.* ¶ 25.)

### B.    Claims for Relief

Plaintiff incorporates by reference his "Factual Allegations" into 11 claims for relief, in which he makes additional allegations.

In **Count One**, Plaintiff raises a claim against NFCU for "Violation of [the Truth in Lending Act (TILA)] and Regulation Z-Illegal Offset." (*Id.* at 10.) He claims NFCU's security interest clause "is a boilerplate term that fails to meet the explicit conditions of 12

C.F.R. § 1026.12(d)(2)." (*Id.* ¶ 29.) According to Plaintiff, the security interest clause is "the functional equivalent of a prohibited offset," entitling him to "actual and statutory damages under 15 U.S.C. § 1640." (*Id.* ¶ 30.)

In **Count Two**, Plaintiff raises a claim against NFCU for "Violation of the Electronic Fund Transfer Act (EFTA) [15 U.S.C. § 1693k]." (*Id.* at 11.) He states enforcement of the NFCU's security interest clause through electronic transfers "is the functional equivalent of the compulsory [electronic fund transfer] that the EFTA bans." (*Id.* ¶ 33.) Plaintiff alleges the security interest clause "grants a lien on all funds and [grants NFCU] the power to demand full payment at any time, creating an unlimited perpetual seizure authority that is void under EFTA regulatory requirements." (*Id.* ¶ 34.)

In **Count Three**, Plaintiff raises a claim against NFCU for "Discrimination and Retaliation (Americans with Disabilities Act)." (*Id.* at 12.) He states he has a "disability protected by the ADA." (*Id.* ¶ 37.) He claims 42 U.S.C. § 407's restriction on assignment, combined with NFCU's security clause, "forces the protected disabled class to choose between abandoning the common convenience of single-institution banking[,] or risking the complete, ongoing deprivation of their entire federal income stream to an unsecured creditor." (*Id.* ¶ 39.) Plaintiff contends this constitutes discrimination under the ADA because it "imposes a disparate burden and inconvenience" on him, which other "non-disabled customers" do not experience. (*Id.*)

Plaintiff additionally claims NFCU's denial of his request for a reasonable accommodation and NFCU's written message to him constituted "a direct, documented act of retaliation and discrimination in violation of 42 U.S.C. § 12101, *et seq.*" (*Id.* ¶¶ 40, 41.) He states NFCU's "policy of willful concealment and targeting of vulnerable demographics supports a finding of malicious intent." (*Id.* ¶ 42.)

In **Count Four**, Plaintiff raises a claim against NFCU for "Violation of Regulation E (Periodic Statements & Error Resolution)." (*Id.* at 14.) He claims NFCU's "electronic debits and subsequent reversals" are "Electronic Fund Transfers (EFTs) subject to Regulation E [12 C.F.R. § 1005]." (*Id.* ¶ 44.) He states NFCU violated Regulation E by

1    "reversing transactions and then erasing the transactional history," in effect failing "to
2    provide accurate periodic statements regarding [its] unauthorized transfers." (*Id.* ¶ 45.)
3    He also claims NFCU violated Regulation E with its "practice of blocking screenshot
4    capture and concealing the true nature of [each] transfer and subsequent erasure," which
5    impeded his "ability to identify, report, and resolve" any errors. (*Id.* ¶ 46.)

6        In **Count Five**, Plaintiff raises a claim against NFCU for "Willful Misconduct and
7    Spoilation of Evidence." (*Id.* at 15.)  Plaintiff alleges NFCU's "practices of erasing
8    transactional history" and "blocking screenshot capture" are "designed to obstruct
9    regulatory oversight and judicial review" and constitute "concealment" and "willful
10   spoilation" of evidence. (*Id.* ¶ 49.) He states "this misconduct," combined with "repeated
11   execution of illegal transfers" and "demonstrated retaliation against a disabled person," is
12   evidence of "a corporate policy of willful and wanton disregard for the rights of its
13   customers." (*Id.* ¶ 50.)

14       In **Count Six**, Plaintiff raises a claim against NFCU for "Intentional Infliction of
15   Emotional Distress." (*Id.* at 16.) He claims NFCU's conduct, including "repeated seizure
16   of protected funds," "maintaining a fraudulent security interest," and "targeting a disabled
17   customer with a corporate threat of service restriction and retaliation," was "extreme and
18   outrageous" and "outside the bounds of civilized decency." (*Id.* ¶ 52.)  Plaintiff alleges
19   NFCU "acted with the intent to cause emotional distress or with reckless disregard of the
20   near certainty that such distress would result." (*Id.* ¶ 53.) As a "direct and proximate
21   result" of NFCU's conduct, Plaintiff claims he "suffered severe emotional distress,"
22   including "financial instability," "exacerbation of pre-existing conditions," and "fear of
23   total financial ruin." (*Id.* ¶ 54.)

24       In **Count Seven**, Plaintiff raises a claim against NFCU for "Breach of Contract
25   (Implied Private Cause of Action under Section 407 of the Social Security Act)." (*Id.* at
26   17.)  Plaintiff claims that 42 U.S.C. § 407(a), under which the right to future payment is
27   not "transferable or assignable, at law or in equity," was incorporated into his credit card
28   agreement with NFCU, "forming an implied contractual right" that any funds deposited

into his account "would maintain their federally protected, non-assignable status." (*Id.* ¶¶ 56, 57.)  He alleges NFCU breached this implied contractual right "by enforcing a security interest and effecting a seizure that is the functional equivalent of a prohibited assignment in equity." (*Id.* ¶ 58.)

In **Count Eight**, Plaintiff raises a claim against Defendants Vought, Bessent, and Gould for "Failure of Administrative Duty ([Administrative Procedure Act (APA)] Challenge–Failure to Issue Protective Rules)." (*Id.* at 18.)  He alleges these three Defendants "had a mandatory administrative duty to enforce compliance" with "the non-assignable nature of 42 U.S.C. § 407 funds." (*Id.* ¶ 62.)  He also states "their failure to issue binding rules or guidance explicitly prohibiting bank-initiated 'security interest' clauses against" federal benefit funds violates the APA. (*Id.* ¶ 63.)

In **Count Nine**, Plaintiff raises a claim for "Failure of Administrative Duty (Mandamus/Declaratory Relief–Failure to Enforce § 407 Mandates)" against Defendants Vought, Bessent, and Gould. (*Id.* at 19.)  He alleges these three Defendants "had a mandatory administrative duty to enforce compliance with [the Truth in Lending Act (TILA) and Electronic Fund Transfer Act (EFTA)]" and a duty "to ensure federal regulations governing fund management" contained 42 U.S.C. § 407's anti-assignment and anti-seizure protections. (*Id.* ¶ 66.)  Plaintiff claims Defendants Vought, Bessent, and Gould's failure to "issue binding regulatory guidance explicitly prohibiting 'security interest' clauses against" federal benefit funds is a breach of their "mandatory administrative duty." (*Id.* ¶ 67.)

In **Count Ten**, Plaintiff raises a claim for "Constitutional Violations (Due Process and Equal Protection–Fifth Amendment)." (*Id.* at 20.)  He names "official-capacity Defendants Bondi, Vought, Bessent, and Gould" to "remedy the systemic constitutional violations." (*Id.* ¶ 75.)  Plaintiff claims NFCU "seized disputed funds without pre-deprivation process," depriving him of his "property without due process of law." (*Id.* ¶ 73.)  He also states that "the legal fiction of 'voluntary acceptance' in an adhesion contract" nullifies 42 U.S.C. § 407 "for the Plaintiff['s] class."  In support of his equal protection

claim, Plaintiff states "this framework…enables banks to secure" interests in federal funds, "while beneficiaries are barred from leveraging the same stream," which imposes a "disparate burden[] on disabled recipients." (*Id.* ¶ 74.)

In **Count Eleven**, Plaintiff raises a claim against NFCU for "Violation of 42 U.S.C. § 407 (Prohibited Equitable Assignment)." (*Id.* at 22.) He states the language of 42 U.S.C. § 407(a) forbids "equitable assignments of the future benefit stream." (*Id.* ¶ 77.) He claims a "blanket 'security interest' in all accounts" leveraged against Social Security benefit deposits is "void" because it constitutes a functional equitable assignment. (*Id.* ¶ 78.) Plaintiff also contends that "even if [the security interest clause bypassed] the 'legal process' prohibition," it "cannot bypass" § 407(a)'s "prohibition of equitable assignments of the future benefit stream." (*Id.* ¶¶ 77, 79.) He states NFCU's "breach" of § 407(a)'s explicit prohibition on assignment "creates an implied right for the beneficiary" to enforce the "non-assignable status of the asset against the contracting party." (*Id.* ¶ 24.)

## III.    Failure to State a Claim

### A.    Defendants Bondi, Vought, Bessent, and Gould

In Counts Eight, Nine, and Ten, Plaintiff raises claims against Defendants Bondi, Vought, Bessent and Gould in their official capacities. A suit against a defendant in his official capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

1    The entities that employ Defendants Bondi, Vought, Bessent, and Gould are the

2    United States Department of Justice (DOJ)[2], CFPB[3], OMB[4], the Department of the

3    Treasury (DOT)[5], and the OCC[6], respectively.  Plaintiff alleges no facts to support that the

4    DOJ, CFPB, OMB, DOT, or OCC had a policy, custom, or practice that that caused him to

5    suffer any constitutional injury, nor did Plaintiff explain how any injury he experienced

6    was caused by any such policy, custom, or practice.  Plaintiff therefore fails to state an

7    official-capacity claim against Defendants Bondi, Vought, Bessent, or Gould, and the

8    Court will dismiss these Defendants and Counts Eight, Nine, and Ten.

9    **B.    Count Three**

10    Liberally construed, Plaintiff appears to allege that NFCU violated Title III of the

11    ADA by discriminating against Social Security recipients through its security interest

12    clause and by denying his request for a disability accommodation.  (Doc. 12 at 12–13.)  He

13    also appears to allege that NFCU retaliated against him for requesting a disability

14    accommodation.  (*Id.* at 12.)

15    **a.    Title III**

16    To state a claim under Title III of the ADA, a plaintiff must show that "(1) []he is

17    disabled within the meaning of the ADA; (2) the defendant is a private entity that owns,

18    leases, or operates a place of public accommodation; and (3) the plaintiff was denied public

19    accommodations by the defendant because of [his] disability."  *Molski v. M.J. Cable, Inc.*,

20    481 F.3d 724, 730 (9th Cir. 2007); 42 U.S.C. §§ 12182(a)-(b).  Private entities are

21    considered "public accommodations" if "the operations of such entities affect commerce."

---

[2]    https://www.justice.gov/ag (last visited November 7, 2025).

[3]    https://www.consumerfinance.gov/about-us/the-bureau/about-director/ (last visited November 7, 2025).

[4]    https://docs.house.gov/meetings/AP/AP23/20250604/118338/HHRG-119-AP23-Bio-VoughtR-20250604.pdf (last visited November 7, 2025).

[5]    https://home.treasury.gov/about/general-information/officials/scott-bessent    (last visited November 7, 2025).

[6]    https://www.occ.treas.gov/about/who-we-are/comptroller/index-comptroller-of-the-currency.html (last visited November 7, 2025).

42 U.S.C. § 12181(7).  These include entities such as hotels, restaurants, theaters, stores, amusement parks, and gymnasiums.  (*Id.*)  The Court does not dispute Plaintiff's disability status and NFCU's status as a public accommodation.  However, Plaintiff fails to allege a causal link between Plaintiff's disability and NFCU's conduct.

As the Court explained in its November 18, 2025 Order, a facially neutral policy violates the ADA only if it burdens a plaintiff "in a manner different and greater than it burdens others." *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996).  While Plaintiff claims that NFCU's security interest clause "imposes a disparate burden and inconvenience" on him, which other "non-disabled customers" do not experience, he does not specify *how* the clause disproportionately burdened him.  Additionally, Plaintiff maintains he requested a disability accommodation from NFCU in the form of "a safety mechanism for managing his affairs while disabled/hospitalized."  However, he fails to describe the nature of the "safety mechanism," and he does not identify the reason NFCU provided for denying his request.  Lastly, Plaintiff fails to allege facts to demonstrate that any of NFCU's alleged conduct occurred *because* Plaintiff is disabled.  Absent more, Plaintiff fails to state a claim under Title III of the ADA.

### b.    Retaliation

To establish a prima facie case of retaliation under the ADA, a Plaintiff "must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse . . . action; and (3) there was a causal link between the two."  *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

Plaintiff alleges NFCU retaliated against him for making an accommodation request.  This claim is based on the alleged message NFCU sent to Plaintiff after his accommodation request, which stated, "[a]ny future incidents of a similar nature will be reason for further review by our Security team which could include prohibiting you from contacting Navy Federal by phone or in person."  However, Plaintiff does not identify what the phrase, "future incidents of a similar nature" in NFCU's message references, nor does he allege any other facts to demonstrate a causal connection between his accommodation

request and NFCU's message to him.  This is insufficient to state a retaliation claim under the ADA.  Accordingly, Plaintiff fails to state a claim in Count Three and the Court will dismiss this claim.

### C.    Count Eleven

In Count Eleven, Plaintiff alleges NFCU violated 42 U.S.C. § 407's equitable assignment prohibition provision by enforcing a security interest clause that permitted automatic withdrawals from Plaintiff's account containing Social Security benefits.  As the Court explained in its September 18, 2025 Order, Section 407 does not create a private right of action.  Private rights of action must be created by Congress, either expressly or by clear implication. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (private rights of action must be created by Congress); *Pearson v. Bank of Am., N.A.*, No. CV-16-03402-PHX-JJT, 2016 WL 5871490, at *1 (D. Ariz. Oct. 7, 2016) (holding that § 407(a) "does not confer a private right of action on a plaintiff"); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1229–30 (9th Cir. 2008) ("The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person. Instead, the statute must either explicitly create a right of action or implicitly contain one." (internal quotations and citations omitted)).

Section 407 does not expressly create a private right of action.  Moreover, Plaintiff's assertion that NFCU's alleged "breach" of § 407(a)'s explicit prohibition on assignment "creates an implied right for the beneficiary" is insufficient to demonstrate any such right. Accordingly, Plaintiff lacks statutory authority to compel compliance.

Furthermore, as the Court noted in its September 18, 2025 Order, NFCU's alleged wrongful conduct falls outside the scope of 42 U.S.C. § 407.  Section 407 bars the use of "execution, levy, attachment, garnishment, or other legal process" to seize Social Security benefits. *Washington State Dept. of Social and Health Servs.*, 537 U.S. at 382; 42 U.S.C. § 407(a).  However, Plaintiff's allegations describe the enforcement of a private contractual agreement, not a legal process.  As such, the account terms at issue here, and NFCU's enforcement of them, do not violate § 407. *See, e.g., Lopez v. Washington Mut. Bank, FA,*

302 F.3d 900, 904–06 (9th Cir.), *opinion amended on denial of reh'g sub nom. Lopez v. Washington Mut. Bank, F.A., 311 F.3d 928 (9th Cir. 2002)* (holding that a bank's deduction of overdraft charges from an account into which Social Security benefits were deposited did not violate § 407, stating that the account reflected a voluntary arrangement, not a compelled transfer).

Accordingly, because § 407 does not create a private cause of action and does not apply to the conduct Plaintiff alleges, he fails state a claim under 42 U.S.C. § 407. The Court will therefore dismiss Count Eleven.

### D.    Counts One, Two, and Four

In Counts One, Two, and Four, Plaintiff raises claims against NFCU for violation of the TILA and Regulation Z, the EFTA, and Regulation E, respectively. Under Article III of the U.S. Constitution, standing to bring a legal claim requires the plaintiff to demonstrate an injury in fact. This injury must be an invasion of a legally protected interest that is concrete, particularized, and either actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Without an injury in fact, there is no case or controversy in the constitutional sense, which is a prerequisite for federal jurisdiction. *Francis v. Cleland*, 433 F.Supp. 605, 611–12 (D.S.D. 1977) (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–35; *U.S. v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, n.14 (1973)). Even liberally construing Plaintiff's Second Amended Complaint, Plaintiff fails to link NFCU's alleged actions in any of Counts One, Two, or Four to a specific injury; in fact, Plaintiff fails to allege that he suffered *any* injury in these Counts. Accordingly, Plaintiff lacks standing to raise these claims under Article III.

Moreover, notwithstanding Plaintiff's standing to raise the claims in Counts One, Two, and Four, Plaintiff's vague and conclusory allegations do not support a conclusion that NFCU violated the TILA, Regulation Z, the EFTA, or Regulation E. While Plaintiff posits several legal theories as "evidence" of NFCU's alleged violations in Counts One, Two, and Four, legal theories are not facts. As such, in these Counts, the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are

1    insufficient.  *Iqbal*, 556 U.S. at 678.  Because Plaintiff does not allege facts to state a claim

2    upon which relief can be granted, the Court will dismiss Counts One, Two, and Four.

3    **D.    Counts Five, Six, and Seven**

4    Counts Five, Six, and Seven—raising claims of willful misconduct and spoliation

5    of evidence, intentional infliction of emotional distress, and breach of contract,

6    respectively—arise under state law.  Under 28 U.S.C. § 1367(c)(3), if a federal district

7    court has dismissed all claims over which it has original jurisdiction, it may, in its

8    discretion, dismiss without prejudice supplemental state law claims brought in the same

9    action.  Although a district court is not required to dismiss the supplemental state law

10   claims, "in the usual case in which all federal-law claims are eliminated before trial, the

11   balance of factors to be considered under the pendent jurisdiction doctrine—judicial

12   economy, fairness, convenience, and comity—will point toward declining to exercise

13   jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484

14   U.S. 343, 350 n.7 (1988); *see also Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884

15   F.2d 504, 509 (9th Cir. 1989).

16   The Court declines to exercise supplemental jurisdiction here because Plaintiff has

17   failed to state a federal claim.  *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A

18   court may decline to exercise supplemental jurisdiction over related state-law claims once

19   it has 'dismissed all claims over which it has original jurisdiction.'"  (quoting 28 U.S.C.

20   § 1367(c)(3)); *Gini v. L.V. Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (when

21   federal law claims are eliminated before trial, the court generally should decline

22   jurisdiction over state law claims and dismiss them without prejudice).  Accordingly, the

23   Court will dismiss Counts Five, Six, and Seven.

24   **IV.    Dismissal without Leave to Amend**

25   Because Plaintiff has failed to state a claim in his Second Amended Complaint, the

26   Court will dismiss his Second Amended Complaint.  "Leave to amend need not be given

27   if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Express,*

28   *Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  The Court's discretion to deny leave to amend is

particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. U.S.*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

The Court cautioned Plaintiff in its September 18, 2025 Order that it would likely dismiss this action if his amended complaint failed to state a claim upon which relief can be granted. Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

## V.    Temporary Restraining Order

Plaintiff seeks an immediate TRO to enjoin Defendant NFCU "from any seizure, setoff, withdrawal, transfer, freezing, or other interference with funds in Plaintiff's deposit accounts" and from retaliatory conduct against Plaintiff. (Doc. 10 at 1–2). In the alternative to issuing a Temporary Restraining Order, Plaintiff requests that the Court issue an Order to Show Cause (OSC) "setting an expedited briefing schedule and hearing on a preliminary injunction," and requiring Defendants to appear and show cause "why a preliminary injunction should not issue." (*Id.* at 2, 8).

To obtain a temporary restraining order or preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Because the Court will dismiss the Second Amended Complaint and this action, Plaintiff cannot succeed on the merits of his claims. The Court will therefore deny Plaintiff's Motion for TRO or preliminary injunction.

//

**IT IS ORDERED:**

      (1)    Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 11) is **granted**. The Clerk of Court must **file** the Proposed Second Amended Complaint (lodged at Doc. 12).

      (2)    The Second Amended Complaint and this action are **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

      (3)    Plaintiff's Motion for Temporary Restraining Order (Doc. 10) is **denied**.

      (4)    The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and finds Plaintiff may appeal in forma pauperis.

      Dated this 5th day of December, 2025.

Jennifer G. Zipps
Chief United States District Judge